IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY,  Plaintiff,  v.  MARK E. BARNSTEAD  *Serve at:*   8437 Madeline Dr.             Saint John, Mo. 63114  and  JANE DOE,  Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** Plaintiff American Family Mutual Insurance Company (hereinafter "American Family"), by and through its undersigned counsel, and, pursuant to the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, does hereby state and allege the following as its Complaint for Declaratory Judgment against Defendants Mark E. Barnstead and Jane Doe:

### PARTIES, JURISDICTION & VENUE

1. American Family is an insurance company organized and existing under the laws of the State of Wisconsin and having its principal place of business in the State of Wisconsin.

2. Mark E. Barnstead is a citizen of the State of Missouri and resides in this Court's judicial district.

3. Upon information and belief, Jane Doe is a citizen of the State of Missouri and resides in this Court's judicial district.

1

4. A substantial part of the events or omissions giving rise to Defendant Barnstead's claim for coverage occurred within this Court's judicial district, in that Defendant Doe filed suit against Defendant Barnstead in the Circuit Court of St. Louis County based upon events that occurred in this Court's judicial district.

5. Subject matter jurisdiction lies with the United States District Court for the for the Eastern District of Missouri pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because this is an action between citizens of different states.

6. Subject matter jurisdiction lies with the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 2201(a) because this Complaint for Declaratory Judgment seeks a judicial declaration of the rights, statuses, and legal relations of and among the parties with regard to contracts of insurance and because a case or controversy of a justiciable nature exists among the parties.

7. Venue of this action is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(1) because all defendants are residents of the state in which said District is located and at least one of the defendants resides in said District.

8. Venue of this action is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in said District.

**FACTS COMMON TO ALL COUNTS**

9. Defendants in this suit are parties to a lawsuit filed in the Circuit Court for St. Louis County, Missouri, case number 14SL-CC01432, styled *Jane Doe v. Mark Barnstead*

(hereinafter "the Underlying Lawsuit").

10. Jane Doe, the plaintiff in the Underlying Lawsuit, alleges in her First Amended Petition, attached hereto as **Exhibit A,** that "[i]n 2011 and 2012, [Barnstead] illegally and criminally videotaped [Jane Doe] in various states of undress while [Jane Doe] lived in [Barnstead's] basement, unknown to [Jane Doe] until June of 2012 when she discovered the hidden cameras."  (Ex. A ¶ 6.)

11. Jane Doe further alleges that "[Barnstead] intentionally committed the above-mentioned acts against [Jane Doe] without her consent or knowledge."  (Ex. A ¶ 7.)

12. Jane Doe further alleges in the Underlying Lawsuit that "[i]n the alternative to paragraph 7" in her First Amended Petition, "[Barnstead] negligently placed video recording devices in an area in which [Jane Doe] had an expectation of privacy and did so without Plaintiff's consent or knowledge."  (Ex. A ¶ 8.)

13. Jane Doe further alleges in the Underlying Lawsuit that, "[a]s a direct and proximate result of [Barnstead's] intentional torts and/or negligence and invasion of [Jane Doe's] privacy inflicted by [Barnstead], [Jane Doe] sustained the herein following serious and permanent injuries:"

   a. "[Jane Doe]" suffered severe p[s]ychiatric trauma as a result of the intentional torts inflicted by [Barnstead]";

   b. "[Jane Doe] suffered severe embarrassment, depression and other emotional and psychiatric disorders requiring medical care and treatment"; and

   c. "[a]ll of the aforementioned injuries and effects are extreme, serious and permanent."

(Ex. A ¶¶ 9-10.)

14. Jane Doe alleges in the Underlying Lawsuit that "[a]s a direct and proximate result of the occurrences mentioned [in her First Amended Petition] and the injuries sustained by [Jane Doe], she will, in the future, be required to expend amounts for medical and psychiatric care, the exact amount of which cannot be definitely ascertained at this time." (Ex. A ¶ 11.)

15. Jane Doe asserts four counts against Barnstead in the Underlying Lawsuit. (Ex. A p.3-5.)

16. "Count I" of the Underlying Lawsuit is a claim for "Intentional Infliction of Emotional Distress."

17. Jane Doe alleges the following in "Count I":

   a. "all allegations made in paragraphs 1 through 11" in her First Amended Petition";

   b. "[Barnstead's] actions were intentional and reckless";

   c. "[Barnstead's] conduct was extreme and outrageous";

   d. "[Barnstead's] conduct directly caused [Jane Doe's] extreme emotional distress"; and

   e. "[Barnstead] knew his conduct would cause [Jane Doe] extreme emotional distress."

(Ex. A ¶¶ 12-16.)

18. "Count II" of the Underlying Lawsuit is a claim for "Invasion of Privacy." (Ex. A p.4.)

19. Jane Doe alleges the following in "Count II":

   a. "all allegations made in paragraphs 1 through 16" in her First Amended Petition;

   b. "[Barnstead] invaded [Jane Doe's] right of privacy through the unreasonable intrusion of Jane Doe's seclusion"; and

4

      c. "[Barnstead's] invasion of [Jane Doe's] privacy caused [Jane Doe] harm" set forth in paragraph 13 of this Complaint.

(Ex. A ¶¶ 17-19.)

20.   "Count III" of the Underlying Lawsuit is a claim for "Willful, Wanton and Malicious Conduct." (Ex. A p.4.)

21.   Jane Doe alleges the following in "Count III":

      a. "all allegations made in paragraphs 1 through 19" in her First Amended Petition; and

      b. "[t]he conduct of [Barnstead] in Counts I and II constitutes willful, wanton and malicious behavior resulting in serious damage to [Jane Doe]."

(Ex. A ¶¶ 19-20.)

22.   Jane Doe "prays [for] judgment against . . . Barnstead on Count III of [her] Petition, for punitive damages to be awarded in an amount deemed reasonable by this Court, together with her costs herein expended." (Ex. A p.5.)

23.   "Count IV" of the Underlying Lawsuit is a claim for "Negligent Infliction of Emotional Distress." (Ex. A p.5.)

24.   Jane doe alleges the following in "Count IV":

      a. "all allegations made in paragraphs 1 through 20" in her First Amended Petition;

      b. "[Barnstead's] actions involved an unreasonable risk of causing emotional distress";

      c. "[Barnstead] knew or by using ordinary care could have known of such risk"; and

      d. "[a]s a direct result of [Barnstead's] negligence, [Jane Doe] sustained medically diagnosable and significant emotional distress as outlined in paragraph 9 through 11" of her amended Petition.

(Ex. A ¶¶ 21-24.)

    25.    Attached hereto as **Exhibit B** is a certified copy of the original record from the St. Louis County Circuit Court for criminal case number for 3SL-CR03344-01, in which Barnstead was the defendant. (Ex. B.)

    26.    On account of "[Barnstead] illegally and criminally videotap[ing] [Jane Doe] in various states of undress while [Jane Doe] lived in [Barnstead's] basement, unknown to [Jane Doe] until June of 2012 when she discovered the hidden cameras", he was indicted on five charges in the aforementioned criminal case: one count of Invasion of Privacy in the Second Degree – Multiple Individuals – Class D Felony, and four separate counts of – Invasion of Privacy in the Second Degree – Class A Misdemeanor. (Ex. B.)

    27.    On or about June 30, 2014, Barnstead plead guilty to all five aforementioned counts and was sentenced to thirty days in jail, with the remainder of his one year sentenced suspended. (Ex. B.)

    28.    American Family issued three successive homeowners policies to Barnstead, to wit: policy number 24-DM9214-01, attached hereto as **Exhibit C**, (hereinafter "the 10-11 Policy"), for the period beginning June 12, 2010 and terminating June 12, 2011; policy number 24DM-9214-01, attached hereto as **Exhibit D** (hereinafter "the 11-12 Policy"), for the period beginning June 12, 2011 and terminating June 12, 2012; and policy number 24DM-9214-01, attached hereto as **Exhibit E** (hereinafter "the 12-13 Policy"), for the period beginning June 12,

2012 and terminating June 12, 2013 (these three policies are referred to collectively hereinafter as the "American Family Policies").

29.     Barnstead is a "named **insured**" on each of the American Family Policies, and each of the American Family Policies states that the word "**you**" as used therein refers to a "named **insured**."  (Ex. C, D, E.)

30.     The following provisions are found within each of the American Family Policies:

**DEFINITIONS**
**The following words in this policy have defined meanings. They will be printed in bold type.**

1. **Bodily injury** means bodily harm, sickness or disease.  It includes resulting loss of services, required care and death.
   **Bodily injury** does not include:
   a. any of the following which are communicable: disease, bacteria, parasite, virus or other organism which are transmitted by any **insured** to any other person;
   b. the exposure to any such communicable disease, bacteria, parasite, virus or other organism; or
   c. emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person.
   . . .

5. **Insured**
   a. **Insured** means **you** . . . .
. . .

9. **Occurrence** means an accident, including exposure to conditions, which results during the policy period, in:
   a.      **bodily injury;** or
   b.      **property damage.**
   Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one **occurrence.**
   . . .

11. **Property damage** means physical damage to or destruction of tangible property, including loss of use of this property.  Loss of use of tangible property does not include any resulting loss of value of such damaged property.
   **. . .**

14. **You** and **your** refer to the person or people shown as the named **insured** in the Declarations. These words also refer to your spouse who is a resident of your household.

. . .

**LIABILITY COVERAGES - SECTION II**
**COVERAGE D - PERSONAL LIABILITY COVERAGE**
**We** will pay, up to **our limit**, compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** covered by this policy.

**Defense Provision.**
If a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this policy applies, **we** will provide a defense at **our** expense by counsel of **our** choice. **We** will defend any suit or settle any claim for damages payable under this policy as **we** think proper.
. . .

**EXCLUSIONS - SECTION II**

**Coverage D - Personal Liability and Coverage E – Medical Expense** do not apply to:

1. **Abuse**. **We** will not cover **bodily injury** or **property damage** arising out of or resulting from any actual or alleged:
   a. sexual molestation or contact;
   b. corporal punishment; or
   c. physical or mental abuse of a person.
   . . .

10. **Intentional Injury**. **We** will not cover **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured** even if the actual **bodily injury** or **property damage** is different than that which was expected or intended from the standpoint of any **insured**.
. . .

17. **Violation of Law**. **We** will not cover **bodily injury** or **property damage** arising out of:
   a. violation of any criminal law for which any **insured** is convicted;
   b. violation of any building or housing code for which any **insured** is convicted; or
   c. violation of any criminal law for which any **insured** is not convicted due to mental incapacity.

. . .

**Coverage D - Personal Liability** does not apply to:
4. **Punitive Damages**. **We** will not cover punitive or exemplary damages.
. . .

**Coverage E - Medical Expense** does not apply to:
3. **Residents**. **We** will not cover **bodily injury** to any **insured** or other person, other than a **domestic employee**, regularly residing on any part of the **insured premises**.
. . .

(Ex. C, D, E.)

31.Barnstead has tendered the Underlying Lawsuit to American Family for defense and indemnity under one or more of the American Family Policies.

32.American Family agreed to defend Barnstead in the Underlying Suit under a full reservation of its rights to later deny that it has a duty to defend or indemnify Barnstead for Jane Doe's claims in the Underlying Suit and is currently defending Barnstead in the Underlying Suit under its full reservation of rights.

## COUNT I
## DECLARATORY JUDGMENT

33.American Family incorporates as if set forth fully herein its allegations contained in Paragraphs 1 through 29, above.

34.None of the claims Jane Doe asserts against Barnstead in the Underlying Lawsuit falls within the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY COVERAGE**" because Jane Doe does not allege damages or an injury constituting "**bodily injury**," as defined by the American Family policies.

35.None of the claims Jane Doe asserts against Barnstead in the Underlying Lawsuit falls within the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY**

9

**COVERAGE**" because Jane Doe does not allege her damages or injuries were caused by an "**occurrence**," as defined by the American Family policies.

36. None of the claims Jane Doe asserts against Barnstead in the Underlying Lawsuit falls within the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY COVERAGE**" because Jane Doe does not allege a "**bodily injury**" that was caused by an "**occurrence**," as defined by the American Family policies.

37. Jane Doe's claim for punitive damages in the Underlying Lawsuit does not seek damages because of "**bodily injury**" or an "**occurrence,**" as defined by the American Family policies.

38. Insurance coverage for liability for punitive damages is void as contrary to public policy.

39. To the extent Jane Doe does allege a covered injury, the "Abuse" exclusion of the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY COVERAGE**" bars coverage for all claims she asserts against Barnstead in the Underlying Lawsuit.

40. To the extent Jane Doe does allege a covered injury, the "Intentional Injury" exclusion of the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY COVERAGE**" bars coverage for all claims she asserts against Barnstead in the Underlying Lawsuit.

41. To the extent Jane Doe does allege a covered injury, the "Violation of Law" exclusion of the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY COVERAGE**" bars coverage for all claims she asserts against Barnstead in the Underlying Lawsuit.

42. To the extent Jane Doe does allege covered punitive damages, the "Punitive Damages" exclusion of the American Family Policy's "**COVERAGE D - PERSONAL LIABILITY COVERAGE**" bars coverage for all claims she asserts against Barnstead in the Underlying Lawsuit.

43. Barnstead is not entitled to coverage under any of the American Family Policies for any of the claims Jane Doe asserts against him in the Underlying Lawsuit.

44. American Family owes no duty under any of the American Family Policies to defend Barnstead in or against the Underlying Lawsuit.

45. American Family owes no duty under any of the American Family Policies to indemnify Barnstead in the Underlying Lawsuit or against any judgment that may be entered therein or against any settlement of any claim asserted therein.

46. Barnstead is not entitled to coverage under any of the American Family Policies for any punitive damages that may be awarded against him in the Underlying Lawsuit or included in any settlement of any claim asserted therein.

**WHEREFORE**, American Family prays for a judicial declaration that it owes no duty under any of the American Family Policies to defend Barnstead in or against the Underlying Lawsuit, for a judicial declaration that it owes no duty under any of the American Family Policies to indemnify Barnstead in the Underlying Lawsuit or against any judgment that may be entered therein or against any settlement of any claim asserted therein, for a judicial declaration that Barnstead is not entitled to coverage under any of the American Family Policies for any punitive damages that may be awarded against him in the Underlying Lawsuit or included in any settlement of any claim therein, for its taxable costs incurred in this action, and for such other and further relief as may be deemed just and proper under the circumstances.

        FOLAND, WICKENS, EISFELDER,
        ROPER & HOFER, P.C.


        /s/ *Wm. Clayton Crawford*
        WM. CLAYTON CRAWFORD   #41619
        1200 Main St., Ste 2200
        Kansas City, Missouri 64105
        Telephone:  (816) 472-7474
        Facsimile:  (816) 472-6262
        Email: ccrawford@fwpclaw.com
        ATTORNEY FOR PLAINTIFF